115-740 Testa Produce v. Edmond & Gallup Good afternoon, Your Honors. May it please the Court, my name is Anita Oak on behalf of Testa Produce v. Appelant. Counsel, would you like to speak? Your Honors, we are here today on a manifest weight question, which is perhaps the only thing that Mr. Alexie and I would agree upon as it pertains to this case. Specifically, the manifest weight question deals with whether or not this condition of ill-being that is found in the elbow in 2010 is causally connected to the petitioner's work accident that occurred on October 3rd, 2008. Now, in order to most succinctly argue why the Commission's decision was not against the manifest weight of the evidence, I would like to dissect Judge Sapero's order in the circuit course when he vacated the Commission's decision and reinstated that of the arbitrator. The Commission, excuse me, when Judge Lopez-Sapero entered his order, one of the things that he stated was that the Commission's citation that the petitioner's complaints did not arise until two years after the accident, which is what IME Dr. Cohen had opined on which they relied upon, he says that that was against the manifest weight of the record, and that is inaccurate. When you look at the decision itself, their opinion was that there were no complaints about the elbow prior to the 2010 date on September 1st, 2010. However, what Mr. Alexie's brief focuses upon and what I believe Mr. Judge Lopez-Sapero has said is that the Commission's decision was not against the elbow prior to the 2010 date on September  Now, what Mr. Sapero erroneously focused on was the fact that there was an argument that there was numbness and tingling documented in the medical records prior to 2010. Numbness and tingling is not the same as the express finding of the Commission that he had elbow complaints in 2010, but not prior. Now, when we further dissect Judge Lopez-Sapero's order, he says that the arbitrator I'm sorry, that the Commission misplaced their reliance on the April 23rd, 2009 record following the EMG and says that they only took part of it in context and said that it was contrary to the full statement. When you read the April 23rd, 2009 EMG report, it's clear that the only person that actually took, that failed to read the full statement was Judge Lopez-Sapero. And the reason that that is, is when you read the entire report, it says in there that they are unable to determine without further workup whether or not it was the work accident and the treatment that followed it, or whether it was the petitioner's insulin dependent diabetes that existed for 18 years prior to even that record. So they say without further workup. And the very next sentence is my favorite part where they say, so we tested the left. Now, the Commission in their decision expressly says immediately after reciting that April 23rd, 2009 record sentence that without further workup, the Commission immediately says, so they tested the left. Now, you go back to the full statement of that record and the conclusory statement in that report, what exactly the possible cause was. And the reason that it was so helpful is because it showed findings on the left side. The left side was not affected in the workers' comp injury. The workers' compensation injury in October 2008 caused right wrist fractures. Nothing happened to the left, which is suggestive that this was a diabetes-related neuropathy. Now, when you go further into the treating records on June 18th, 2009, the other treater, Dr. Heller, says in his records that he suspects that the primary problem is arthritis occurring in the wrist and not actually the carpal tunnel problems. He goes on further in that record to actually say that he suspects that the diabetic neuropathy was causing slight hand numbness. So that right there between the two treating doctors are the only people that draw any nexus between numbness and tingling, diabetes, and carpal tunnel. So who's Dr. Fernandez? Dr. Fernandez is the last treater in the course of petitioner treatments. And in summary, what was his opinion? So in December of 2010, Dr. Fernandez introduces his opinion where he says that, okay, the petitioner is complaining of numbness and tingling, and then he says, I suspect that it's related to the diabetes. He doesn't say it's related to the October 2008 accident. He doesn't say it's related to any treatment in between. It is so vague, it is so nonspecific, and that is where the commission was proper in saying that there was a failure of proof by the petitioner to meet his burden. Well, you're saying there was no causal connection provided? What are you saying? I'm saying that it's extremely weak. I'm saying that it does not get to the point where the petitioner says there, one of their purposes is to actually, when you have conflicting medical evidence, right, which is what we have. We have Dr. Fernandez in December of 2010 say related to all of this without specifying it further. That is, in my opinion, a very vague causal connection opinion. Nonetheless, it's there. But nonetheless, it's there. Exactly right. And now you're going to compare it to the detailed opinion of Dr. Cohen, who's a Section 12 examiner, who has seen this individual four times since the onset of his conditions of well-being. And then what the commission is going to do is they're going to weigh them. And you know as well as I do, as well as salvaging case law, that the purpose of the commission is also to take competing medical evidence, conflicting medical evidence, and decide which is the one to be given more weight, and that is exactly what they did. So when you take that and connect it to the manifest weight question, why can't the commission weigh that? They weighed all of the evidence. They weighed the entire record, the record that did not have a single mention of an elbow complaint until 2010. Now, when you look at that further and you look in December of 2010 at the record that, you know, where Dr. Fernandez gives that opinion, it's very telling, because what the complaints were was expressly stated that the petitioner said, I'm having complaints in my medial elbow that extend distally, right? So if it's going to be starting up here and going down, why didn't we see that before? That never happened. Can I ask you a question? Sure. Slow down a little bit. What was the finding on the December 2010 EMG? What did it say? So the December 2010 EMG showed that there was some improvement in the peripheral neuropathy as compared to April 23, 2009. Quite likely it's because he had surgery in between then where the carpal tunnel was released, you know, something that the respondent paid for in spite of the fact that two treaters. Well, does it also say that it noted that the right ulnar neuropathy had worsened since April 2009? Yes, it did. Now, if it said it had worsened since 2009, doesn't that indicate to you that he had a right ulnar neuropathy in April of 2009? No, it doesn't for the fact that, respectfully, that when you go back to the April 2009 EMG, one, it says that it was to some extent inconclusive, which is why they started testing the left, you know, wrist and doing the left upper extremity testing, and that's where they decided that, okay, this guy has a diabetic- related neuropathy, and it's on both sides, which suggests that, you know, this has been going from elbow down did not happen until 2010. So by them stating that the right ulnar neuropathy had worsened since April 2009 does not suggest to you that he had some right ulnar neuropathy in 2009? How does it get worse since 2009 if he never had it in 2009? Well, I think that they're putting stress on the fact that in April of, April 23rd 2009's EMG report, they're saying that they can't definitively say anything. They're saying that there's, when they study that part of the upper extremity, that there isn't much of an indication. So, I mean, to say that it exists, where is his causal connection opinion to say that, you know, it existed and that is enough for it to be the biggest neurological symptoms as early as April of 2009, didn't he? Did he report neurological symptoms? Yeah. And his EMG report indicated that he was reporting a cold sensation and tingling in his right hand and fingers. Right, which subsequently, not one, but two treaters opined was related to the diabetic condition and causing carpal tunnel, not cubital tunnel. We don't have cubital tunnel come into the picture until December 1st, 2010, which is exactly what the commission said, which is why they relied on Dr. Holmes' opinion, I'm sorry, Dr. Cohen's opinion, because it did not exist prior to then. This is an entirely new symptom. Well, I guess I will, unless there are any other additional questions, I will readdress this matter on rebuttal. Thank you. Unloaded, prepared. May it please the court. Mr. Pengello, as you know by reading the record, was about the height of the top of the door when he fell. His testimony unrebutted. He landed on his keister and his right wrist. We know how that happens. Have you ever seen a colleague's fracture? You hit the palmer base of the ulnar and the radius. It impacts, in fact, the medical records demonstrate an impaction fracture. GROIA, the first orthopod to treat him, determined that maybe a closed reduction would be appropriate, puts him in a cast, but cautions that we have to have an What's interesting is the records from the emergency room talk about spiraling as well as a transverse fracture. I'm not implying that Dr. GROIA is guilty of malpractice. I'm suggesting that based upon the immediate orthopedic care after the emergency room, there was a little less than the optimum kind of approach. That initially is demonstrated when you look at Dr. Heller's records, and he finds a TFCT tear. When you look at the EMG, the EMG talks about the ulnar nerve distribution, the median nerve distribution, as well as the radial nerve distribution. Now, the guy has an impact fracture from 10 feet. He's treated by three different physicians. He undergoes two surgical procedures, and then he's released to return to work with significant restrictions. But he has continuing complaints. I submit to you counsel said that there was no mention of the elbow problem, like it's a, you know, the great toe is fine, but the little pinky is really bothering. We're talking about a neurological condition. That was the investigation subsequent to the fracture being reduced. That was of everybody's concern. Heller talks about it. The EMGs are performed because of it. There's no discussion about, well, the cubital tunnel is here, so we're not going to worry about the ulnar or radial nerve because his injury was at the wrist. He's only complaining at the wrist. Look at the athletic records of April and May of 09. He's getting therapy to his shoulder. He's doing flexion extension exercises on his upper extremity. In the records of Dr. Fernandez, forgive me, I'm trying to be quick because the hour goes late. Dr. Fernandez, prior to his absolute conclusion that this ulnar or this cubital tunnel problem is related to this whole mess, he talks about three visits prior to that pronunciation that this guy's got early stage cubital tunnel. The guy worked for intervals. We don't. He testified that he was out picking up garbage. He was handling, picking up light orders. I submit to you that the commission, when confronted with the decision of this arbitrator, a well-reasoned, documented, consistent decision with appropriate findings of credibility, what did they do? They looked at what they believed was the paucity of the articulation of the opinion of causal connection by Dr. Fernandez and said, oh, Cohen's was a lot more detailed. But Cohen never says he reviewed the EMG of 2009. He doesn't say that he looked at the therapy records of 2009 and 2010 where the guy's getting upper extremity therapy. He doesn't talk about the fact that the guy had an ulnar shortening. He had an osteotomy done. They took part of the bone out. When you land from 10 feet, that impacts the whole arm. And we're talking about a neurological problem. We're talking about a constant, nagging, limiting pain. What's the remedy for that? The remedy is to open up the cubital tunnel and at the guy owns canal. They weren't happy enough with Dr. Cohen's conclusion that the cubital tunnel is not related because he didn't complain about it for two years. Is that what we base causal connection on? Is the law going to be whatever you tell that emergency room shortly after this occurrence, that's it? We're not going to look at any other records after that. We're not going to look at the physical therapy records. We're not going to look at the discretion of Heller. We're not going to look at the EMG. We're not going to look at what Dr. Fernandez said. We're not going to look at anything beyond what he complained of at the initial intervention by a medical provider. Manifest weight. Those of us who practice in this arena, you gentlemen who have to hear us go on and on about this. Manifest weight has become a cudgel. And here's what I mean by that. And I believe in recent years this body has done a very good effort to try and parse out these definitions. In Judge Lopez-Sapero's defense, he indicates that he is tired, his words not contained in his order, but it's there, it's hinted at. I'm tired of the commission changing a prima facie case when they say, oh, we find Cohen more credible because it's more detailed. But is it correct? Isn't the body of all of this evidence supposed to be considered as opposed to Cohen on the fourth return of my client? And then an addendum, so five reports. He didn't complain about it for a few years, so it's not related. Oh, and by the way, that Guyon's Canal, which is at the wrist, where the guy had several scaphoid lunate bones fractured, Colley's fracture with displacement and spiraling, a shortening of the ulnar bone by an osteotomy because of therapeutic purposes, all of that is only limited to here. So if you go above, it's not related. Why? Because Cohen says he didn't complain. Well, given all the trauma that went on in this wrist, I'd be surprised if the guy could distinguish between this and this. I think the judge got it right. I know it's a huge burden. I know this Court is wont to reverse the commission. But the commission decision, in comparison to the arbitrator's decision, in conjunction with this record, in all of the evidence following the 08 injury and going forward, long before Dr. Fernandez's intervention, talks about the upper extremity, the upper extremity. The FCE talks about the upper extremity. It doesn't say the hand or the wrist in the therapy records. They provide therapy for the upper extremity. I think the judge got it right, and I would ask your Honorable Court to affirm this decision where the judge put in the arbitrator's decision in place of the commission. Thank you. Thank you, Counsel. Counsel, you may reply. I'm trying to think where I want to start with this, but even if we accept the proposition that there was something wrong in the April 23, 2009 EMG as it pertains to the ulnar neuropathy, he's pointing to this big phone book of this, is that one thing, even for the sake of argument, we say that existed, that one abnormality. You have to take that whole phone book and dissect it and look at it under a microscope. And we have the hospital records, two different hospital records. We have Athletico's records, which it's therapy, so I'm not even concerned whether they render a causation opinion. Then you have Dr. Groya, Dr. Heller, Dr. Holmes, and Dr. Fernandez. You have all of these treaters, and not one of them expressly gives a causation opinion that says that an elbow condition is related to the work injury. Not in any one of those pages until you get to September 1, 2010, do you see a mention of a specific elbow complaint. Prior to that date What were his symptoms that led to the 2009 EMG? What was he complaining about? He was complaining of the coldness in the tips and sensation in the last two digits. And isn't that classic cubital tunnel syndrome, if you have numbness in your little and ring finger? Sure. And if it's the median nerve, it's your thumb and pointer finger, whatever you want to call it. So, I mean, doesn't that kind of indicate that he had a cubital tunnel problem at the time the EMG was ordered in 2009? No. But he's given the classic symptoms. Well, even if he's given the classic symptoms, where's the opinion that connects it? You know, this is shifting the burden onto the respondent to prove that it didn't exist. It's his burden proved to show that it did, you know, by a credible medical opinion. And he did not do that. When you even go back to the initial complaints of any, you know, paresthesias going on in the hands, the first times that he says that in 2009, it involved the thumb and the index finger, not the little finger, not the ones, not the ones that you astutely pointed out just now deal with that distribution. That didn't happen until 2010. And even then, when you go between September 1st, 2010 and December of 2010, that period where now the cubital tunnel is actively being identified, when you get to that point, he's even saying that in that three-month time, he's experiencing improvement in his symptomology. So, I mean, this just goes to show that the ulnar neuropathy did not exist until 2010. And even when you take it back, you know, to 2009, the April 23rd opinion by Dr. Holm and the June 18th opinion from Dr. Heller, both of those opinions say that they are attributing the hand paresthesias to the diabetes that was superimposed carpal tunnel, not cubital. If the distribution matched up at that time and was cause for concern, you would have seen a lot more treatment and a lot more attention given to the ulnar distribution, given to the elbow. And what you did see, as a matter of fact, is when they did actually look at it, it was a negative phalanx and it was a negative tennels in, I'm sorry, in a negative flexion test in the elbow until all times until this, the first record that's in September 1st, 2010. There was absolutely nothing documenting the elbow complaints or positive findings concretely until the fall and winter. Well, when you say concretely, certainly Holm's opinion back in 2009 said he had an underlying neuropathy. He related it to diabetes. But then along comes Groya and says, you're wrong. This man never had any symptoms prior to the accident. And therefore, it's not diabetes. It's not related to diabetes. So you can't say that there are no symptoms. The symptoms were there with the EMG in 09. And I think that's backed up by the statement that they make in 2010 where they said that it's worse than it was in 09. Well, if it wasn't there, it couldn't be worse than. It would be seen for the first time. And it wasn't. Now, according to the EMG report in 2010, this could be seen with an underlying neuropathy in the region of the going canal. It had worsened since the April 2009 EMG. So I think there's two parts to respond to that. One being that even if it was present in 2009, something, as small as it may, there are plenty of medical instances where something exists like a herniated disc, but it is asymptomatic. If the symptoms, as Justice Stewart pointed out, if the symptoms matched up with that distribution, we would have seen a lot more documentation in the past that the ulnar neuropathy exists, that it's causing the symptoms, and you would have seen an express causation opinion from any one of these five different medical providers, treating medical providers, that there is a causal connection. What the commission pointed out is that nobody gave that opinion, that the existence of a specific, what the petitioner said in December of 2010, I am experiencing pain. We're not talking about numbness and tingling. We're talking about expressly saying I have pain in my elbow, and it radiates distally, you know, and then I have this numbness and tingling. That didn't exist any time before 2010. You look at that phone book of records, and every single one of these pages is lacking right now, lacking, lacking, lacking, lacking, all the way until December of 2010. And there it is. How can that be said that that is not against the matter of the evidence? It's not. The commission got it right. They looked at the entire record, and they hung their hat on something. Your time is up. Thank you. Thank you, Counsel Bowles, for your arguments in this matter. It will be taken under advisement, and a written disposition shall issue. Court will stand in recess until 9 a.m. tomorrow morning.